### CRAIG *v.* MOUNT CARBON CO., Limited.

*(Circuit Court, D. West Virginia. December 3, 1890.)*

1. RAILROAD COMPANIES—NEGLIGENCE—INJURIES TO TRESPASSER ON TRACK.
    A person riding on a railroad velocipede over and on the track of a railroad company, without having obtained its consent for that purpose, is a trespasser, and, in the event of injury resulting therefrom, no action can be maintained against the company, unless willful negligence on its part, which could have been avoided, is proven.
2. SAME—LICENSE TO USE TRACK.
    No action can be maintained in such case where permission was asked for and given by said company to so use their track at the plaintiff's own risk, unless the defendant was guilty of willful negligence.
3. SAME.
    Mere acquiescence on the part of the company to such use of their track gives no right, but in such case the person so using is a trespasser, and no action can be maintained, unless the defendant was guilty of willful negligence.

*(Syllabus by the Court.)*

At Law.

This is an action to recover damages for the death of plaintiff's husband, alleged to have been caused by the negligence of the defendant company. On the trial of the case evidence was introduced on the part of the plaintiff tending to prove that the defendant is the owner of coal mines in Fayette county, W. Va.; that said mines are located on Armstrong creek, about five miles from where said creek empties into Kanawha river; that for the purpose of transporting coal to said river, and to the Chesapeake & Ohio Railway, defendant had built a railroad pass-

ing up said creek from said river to the coal mines of defendant; that along the line of said road it was thickly settled, and, the county road being in the creek much of the way, pedestrians frequently walked on the railroad track; that said railroad was a steep grade, and near the upper end of same defendant had made a safety switch or cut-off; that at the time of the killing of the decedent, C., the said switch was closed, and the engines and cars of the company were above the same; that when said switch was open, if any car or engine got away from those having it in charge, it was thrown off or derailed, and could not go down said railroad track; that at the time of the killing aforesaid a loaded box-car, the property of the Newport News & Mississippi Valley Railroad Company, then in the custody of defendant, was standing on the track above said safety switch; that said car had but one brake; that the chain attached to said brake had a defective link, apparent on inspection by one competent for the purpose; that decedent was a miner in the employ of defendant, but had nothing to do with operating defendant's railroad; that about the last of November, 1888, decedent and one V., his son-in-law, bought a railroad velocipede, on which they rode every morning, when the track was not wet or frozen, from their home, about two miles below the mines where they worked, to the mines of defendant at upper end of the track, where they would take said velocipede off the track, near office of defendant, lock it, and leave it until evening, when they would put the velocipede again on the track, and ride back to their homes; that this was done continuously, morning and night, for about a month before the accident; that on the evening of the 15th of January, 1889, when it was nearly dark, and the engines and cars of defendant were at the upper end of the railroad, and above the safety switch, they put the velocipede on the track, and started down the same; that just after they started servants of defendant attempted to shift said box-car lower down the track from where it stood; that one Z., a brakeman in the employment of the defendant company, as such, was at the brake of said car; that it started, and, its speed becoming too much accelerated, he attempted to stop it by turning the brake; that thereupon, by reason of said defective chain, it broke, leaving him powerless to manage the car; that, being thus powerless, he jumped off; that the safety switch was closed, and the car ran down the main track past the switch with accelerated speed; that, near the home of the decedent it had reached the great speed of about 80 miles an hour, and ran over said velocipede, killing both decedent and his son-in-law, V., who were thereon; that this use of the track had been made openly, said velocipede being taken off below defendant's office, and in defendant's yard, but not in sight of the general manager of defendant, unless he was in that neighborhood; that no objection was ever made by said general manager, in charge of defendant's works, nor by any officer of said company, to said decedent so riding on said track, so far as witnesses knew, during the time of so using.

Evidence was introduced by defendant tending to prove that the safety switch was placed there to protect the property of the company alone,

and was left open only when the engine of the company was below the switch; that if a car was derailed on the switch, it wrecked the car; that the defect in the chain was not apparent on inspection; that the parties who first brought the velocipede to the railroad asked permission to so use said velocipede on said road of the general manager, who refused said permission, but said they might use it at their own risk, and that it was dangerous; that they did use it for a time, and sold it to one S., and told him that the general manager had refused them permission to run it, except at their own risk; that said S., while negotiating for the purchase, and before completing same, asked like permission of the general manager, which was refused in like manner, except at said S.'s own risk; that S. sold said velocipede to said C. and V. in November or December, 1888, and told them at the time they purchased that the general manager had refused permission to him to run it except at his own risk; that some time after C. and V. purchased the velocipede, and while running the same on said track, as aforesaid, they told different persons that they had no permission from the general manager to do so, and told one witness, G., that they were running it at their own risk; that, on the evening the accident occurred, they narrowly escaped being run over by the engine of defendant company after they had gotten on their velocipede to run down home, and were then warned by said G., an engineer in defendant company's employ, against the danger of so using same, and again said they were so using it at their own risk; that before they purchased said velocipede it was left by its former owners at different parts about defendant's property, and frequently at the same place where C. and V. left it; that it was used by said C. and V. early in the morning and late in the evening, and that the general manager of the defendant company did not know they had bought the velocipede, or were using it, until after their death; that the heaviest grade on said defendant's railroad was at the upper end, and was 1 95-100 of a foot in 100 feet; that said box-car was brought by the Chesapeake & Ohio Railway Co., loaded with corn for defendant company, and was received by defendant company, and taken to the mines, a day or two before the accident; that it became necessary to remove it from the place where it had been standing, in order to enable the defendant's locomotive to go into the engine-house for the night, and after the car was moved to another track, and while the brakeman was trying to stop it on the other track, the brake chain broke, and the brakeman then could not stop the car. The plaintiff then introduced evidence tending to contradict the witness G.

Plaintiff asked the court to instruct the jury as follows:

"(1) The court instructs the jury that if they believe from the evidence that the direct cause of the death of the decedent, Charles Craig, was due to the negligence of the defendant, in the absence of contributory negligence, they must find for the plaintiff, even though they may believe the defendant was a trespasser, and unlawfully upon the defendant's track:

"(2) The court instructs the jury that if they believe from the evidence that the direct cause of the decedent, Craig's, death was the negligence of the defendant or its servants, in the absence of contributory negligence on his part, then they shall find for the plaintiff, though they may further believe that the

said decedent had agreed to accept the permission of the defendant to use the velocipede on its track at his own risk.

"(3) The court instructs the jury that if they believe from the evidence that the decedent, Craig, came to his death by reason of the negligence of the defendant or its servants while he was riding on the railroad velocipede on the defendant's railroad track, and was so riding with the knowledge and acquiescence of the defendant, they must find for the plaintiff.

"(4) The court instructs the jury that if they find from the evidence that the decedent, Craig, came to his death by reason of the negligence of the defendant or its servants while he was riding on a railroad velocipede on the defendant's railroad track, and was so riding on said velocipede by the permission of the said defendant, then they must find for the plaintiff; and the court further instructs the jury that if they find from the evidence that the decedent had, for a long time next before his death, been in the habit of using said velocipede on said defendant's said track, with the knowledge of said defendant, and without protest or objection of said defendant, they may infer such permission.

"(5) The court further instructs the jury that if they believe from the evidence that a railroad car was in the custody of, and was being used by, defendant on its railroad, and by reason of a defective brake, the defect of which was apparent on inspection. broke away from the control of the defendant or its servants, and ran down the railroad track, and over the decedent, and killed him, the said defendant was guilty of negligence; and it is immaterial whether the defendant owned said car, or whether it was owned by the Newport News & Mississippi Valley Railroad Company.

"(6) The court further instructs the jury that, in an action against a defendant for damages, and the defendant relies for his defense on contributory negligence in the plaintiff, the burden of proving such contributory negligence is on the defendant.

"(7) The court further instructs the jury that if they believe from the evidence that the decedent, Charles Craig, was killed by reason of the negligence of the defendant, and that such negligence of the defendant was the direct and proximate cause of the death of the decedent, and that decedent would not have been killed but for said negligence of the defendant. they must find for the plaintiff, although they may believe that the said decedent was himself guilty of negligence by being on the railroad track of defendant when he was so killed."

*Okey Johnson, J. F. Brown,* and *B. W. Moore,* for plaintiff.
*Knight & Couch,* for defendant.

Said instructions were objected to by the defendant, and refused by the court. Thereupon the court, in lieu of such instructions, so asked by the plaintiff, gave to the jury the following:

JACKSON, J., (*charging jury, after stating the facts as above.*)

1. If the jury finds from the evidence that the plaintiff's intestate at the time of his death was riding on a railroad velocipede over and on the track of the defendant company without first having obtained its consent for that purpose, then, under such a state of facts, he was a trespasser, and the plaintiff cannot maintain this action, unless they further find from the evidence that there was willful negligence on the part of the defendant company, which could have been avoided, in which event he could.

2. If the jury find from the evidence that the plaintiff's intestate applied to the general manager of the company for permission to use its road for the purpose of running his velocipede on it, and obtained from the general manager the right to use it at his own risk, then plaintiff cannot maintain this action, unless the defendant was guilty of willful negligence.

3. If the jury find from the evidence that the plaintiff's intestate had for a month been in the habit of running his velocipede on defendant's road without objection on its part, the mere acquiesence on the part of the company did not give him the right to use the road for such purpose, but in such case he was a trespasser, and could not maintain this action unless the defendant was guilty of willful negligence.